UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TOMMY STOWE, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   No. 2:22-cv-00026-NT |
| | ) |
| CUMBERLAND FARMS, INC., | ) |
| | ) |
|     Defendant | ) |

## MEMORANDUM DECISION ON MOTION
## FOR LIMITED PROTECTIVE ORDER

Plaintiff Tommy Stowe alleges that Defendant Cumberland Farms, Inc., unlawfully fired him in retaliation for his refusal to serve an unmasked customer in May 2020 when Maine had a COVID-19 mask mandate in effect. *See* Complaint (ECF No. 11-6). Cumberland Farms moves for a limited protective order permitting it to delay producing a surveillance video of Stowe and the customer until after Stowe's deposition in order to preserve the impeachment value of the video. *See* Defendant's Motion for a Limited Protective Order ("Motion") (ECF No. 12).

In support of its motion, Cumberland Farms cites Fed. R. Civ. P. 26(c)(1), which authorizes courts to issue a protective order specifying the timing of discovery upon a showing of good cause, and Fed. R. Civ. P. 26(d)(3), which gives courts discretion to sequence discovery in the interests of justice. *See* Motion at 3. It also points to caselaw from this District indicating that delaying production until after depositions is the preferred solution when evidence could potentially have both substantive and impeachment value. *See id.*; *Blais v. St. Mary's Health Sys.*, No. 2:21-cv-00068-NT,

1

ECF No. 26 (D. Me. Sept. 13, 2021); *Jewell v. Lincare, Inc.*, No. 1:11-cv-00195-NT, ECF No. 23 (D. Me. Dec. 14, 2011); *Manske v. UPS Cartage Servs.*, 789 F. Supp. 2d 213 (D. Me. 2011); *Gerber v. Down East Cmty. Hosp.*, No. 1:09-cv-00351-JAW, ECF No. 41 (D. Me. Mar. 1, 2010).

Unsurprisingly, Stowe opposes Cumberland Farms' proposed delay. *See* Plaintiff's Opposition to Motion for Limited Protective Order (ECF No.14). He argues that this case is distinguishable from those in which this Court granted limited protective orders, and that this Court should not endorse Cumberland Farms' unfair "'gotcha' deposition strategy" because it is antithetical to the purpose of discovery. *Id.* at 5-6. He further highlights First Circuit caselaw, *see id.* at 3-4, cautioning that the value of surprise is frequently overstated because "if inconsistencies emerge, they are probably due more to memory lapses or inartful questioning than to studied prevarication," *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1020 (1st Cir. 1988).

After considering the parties' arguments, I conclude that Cumberland Farms has not shown good cause to delay producing the surveillance video until after Stowe's deposition. Several factors inform my decision.

First, although this Court has endorsed delayed production when evidence has both substantive and impeachment value, it has also recognized that this is not an "iron clad rule" that "will govern every case," *Jewell*, No. 1:11-cv-00195-NT, ECF No. 23 at 2, and "that courts tend to demand an item's immediate production when its substantive evidentiary value outweighs its impeachment value," *Manske*,

789 F. Supp. 2d at 215. Given that the video in this case depicts the event at the heart of Stowe's complaint, I have no trouble concluding that the video's substantive evidentiary value outweighs its potential impeachment value, particularly where Cumberland Farms has not identified any specific reason to suspect Stowe of duplicity.

Second, Cumberland Farms does not suggest that the video is anything other than routine surveillance footage from one of its convenience stores. This distinguishes the video from the audio recordings made in anticipation of litigation that were at issue in the cases where this Court permitted delayed production. *See Blais*, No. 2:21-cv-00068-NT, ECF No. 26 at 2; *Jewell*, No. 1:11-cv-00195-NT, ECF No. 23 at 1; *Manske*, 789 F. Supp. 2d at 214.[1]

Finally, discovery is meant "to avoid surprise and the possible miscarriage of justice, to disclose fully the nature and scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain the information needed to prepare for trial." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2001 (3d ed. 2010) (footnotes omitted). I find that these functions would be best served by the immediate production of the surveillance video, which, according to Cumberland Farms, "captures an accurate visual recording of the conduct of [Stowe] and the customer." Motion at 4. Indeed, mutual knowledge of what the video shows may well narrow and simplify issues, which will, in turn,

---

[1] It is not clear whether the audio recordings at issue in *Gerber* were made in anticipation of litigation. *See Manske v. UPS Cartage Servs.*, No. 2:10-cv-320-JAW, 2011 WL 322002, at *1 (D. Me. Jan. 30, 2011) (noting that it is "impossible to determine" the precise context of the limited protective order issued in *Gerber*).

make Stowe's deposition a more productive exercise and lead to a more efficient resolution of this matter. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts [it] has in [its] possession.").

For these reasons, the motion is **DENIED**.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: June 1, 2022

/s/ Karen Frink Wolf
United States Magistrate Judge

4