**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

TOMMY STOWE,         )
                             )
            Plaintiff,     )
                             )
v.                      )    Docket No. 2:22-cv-00026-NT
                             )
CUMBERLAND FARMS, INC.,   )
                             )
            Defendant.   )

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before me is a motion for summary judgment by Defendant Cumberland Farms, Inc. (ECF No. 49). For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**FACTUAL BACKGROUND**[1]

The Defendant, Cumberland Farms, Inc. ("**Cumberland Farms**"), operates convenience stores throughout the Northeast. Def.'s Reply Statement of Material Facts in Supp. of Its Mot. for Summ. J. ("**SMF**") ¶ 1 (ECF No. 57). In May of 2018, Cumberland Farms hired the Plaintiff, Tommy Stowe, as a Guest Service Associate in its retail store on Pine Street in Portland, Maine ("**Pine Street Store**"). SMF ¶ 6. Stowe's direct supervisor was Lori Napoleone, Store Manager at the Pine Street Store. SMF ¶ 8. Napoleone reported to Wendy Lefebvre, who was the District Manager who oversaw the Pine Street Store. SMF ¶¶ 48, 10.

---

[1]     This background is drawn from the Local 56(h) Stipulated Record and the Defendant's Reply Statement of Material Facts (ECF No. 57), which incorporates the Plaintiff's Opposing Statement of Material Facts (ECF No. 53) and the Defendant's Statement of Material Facts (ECF No. 51).

Stowe worked at the Pine Street Store during the outbreak of the COVID-19 pandemic in 2020. On April 29, 2020, Governor Janet Mills issued an executive order (the "**Executive Order**"), which required individuals to wear cloth face coverings in public settings, including retail stores.[2] SMF ¶ 13; Me. Exec. Order No. 49 FY 19/20 (Apr. 29, 2020). Although he never read the Executive Order, Stowe learned about it through television and newspaper headlines. SMF ¶¶ 14, 79.

After the Governor issued the Executive Order, Cumberland Farms created a policy requiring employees and guests to wear masks in its stores unless they met certain exceptions. SMF ¶ 16. It posted signs as shown below at the entrances to its stores.



---

[2]     The Executive Order provided an exception for individuals with certain medical conditions. The order was silent as to how the mask mandate would be enforced. Me. Exec. Order No. 49 FY 19/20 (Apr. 29, 2020).

SMF ¶ 17; Leonard Aff. Ex. 1, at 3 (ECF No. 48-14).

Cumberland Farms also developed the following internal policy: "Should a guest come in without a mask, in the cities, towns, or states that mandate them, the team members should provide a gentle reminder to our guests that enter our facility. However, at no point will we refuse service or get into a verbal confrontation with a guest." SMF ¶ 18. Napoleone and Lefebvre communicated the masking policy to Stowe and all other store employees. SMF ¶¶ 19–20.

Stowe complained to Napoleone and Lefebvre that the policy not to refuse service to maskless guests violated the Executive Order and was unfair and unsafe. SMF ¶¶ 21, 27, 72–73.[3] Stowe testified that he complained "many times" and "continuously hammered" Napoleone and Lefebvre on this topic. 9-27-22 Tommy Stowe Dep. Tr. ("**Stowe Dep.**") 32:7–32:16, 122:14–123:5 (ECF No. 48-1). All of the Pine Street Store employees raised the same complaint to Napoleone and Lefebvre, but the record is silent as to how many employees worked at the Pine Street Store. SMF ¶ 22. Napoleone conveyed to Lefebvre that the employees, including herself, had concerns about the policy, and she mentioned Stowe by name. SMF ¶¶ 23, 28; 10-27-22 Lori Napoleone Dep. Tr. ("**Napoleone Dep.**") 36:11–37:8 (ECF No. 48-8). Napoleone believed that Stowe's concerns were communicated to human resources. SMF ¶ 74; Napoleone Dep. 18:6–18:10. She based that belief on the fact that soon

---

[3]   The Defendant denies Stowe's assertion that he complained to management about having to serve guests who were maskless. *See* SMF ¶¶ 72–73. But the Defendant's denials are at best qualifications and are most accurately described as argument. The Plaintiff's assertions are supported by the record. *See* Tommy Stowe Dep. Tr. 24:4–24:15, 31:13–31:24, 122:14–123:5 (ECF No. 48-1).

after she communicated the concerns, HR sent emails addressing the nature of Stowe's complaints. SMF ¶ 74; Napoleone Dep. 18:6–18:21.

Prior to May 29, 2020, no customers had ever complained about Stowe, and he had never been disciplined. SMF ¶¶ 50, 96. And while Stowe complained about the mask policy, he complied with it by serving many customers who came into the store without face masks. SMF ¶¶ 31, 33.

On May 29, 2020, Stowe was working an overnight shift alone at the Pine Street Store. SMF ¶¶ 32, 81. At around 3:05 a.m., a customer entered the store without a face covering. SMF ¶ 34. Stowe asked the customer if he had a mask, and the customer said no. SMF ¶ 35. Stowe informed him of Cumberland Farms' masking policy. SMF ¶ 36. The customer responded in an agitated tone and swore at Stowe. SMF ¶¶ 37, 84. Stowe told the customer to leave, and the customer asked if Stowe was refusing service because he was not wearing a mask. SMF ¶¶ 38–39. Stowe answered that he was refusing service based on how the customer was treating him, not because he was not wearing a mask. SMF ¶ 40. The customer left the store. SMF ¶ 41. As the customer left, Stowe shouted, "Don't fucking come back!" and loudly closed the door. SMF ¶ 42.

Later that morning, Stowe told Napoleone about the incident and let her know that she might receive a complaint from the customer. SMF ¶ 44. That afternoon, the customer called Napoleone to complain. SMF ¶ 45. The customer explained that he had a medical condition that prevented him from wearing a mask. SMF ¶ 46. Napoleone apologized and said that Stowe's shouting "Don't fucking come back" was

unacceptable and she would take action. SMF ¶ 47. Napoleone reported the complaint to Lefebvre, who told her to issue Stowe a final write-up.[4] SMF ¶ 48.

The customer also contacted Cumberland Farms' customer complaint department. He threatened to press charges against Cumberland Farms and stated that he was a veteran and that he could not wear a mask due to medical reasons. SMF ¶ 49. Cumberland Farms' Manager of Employee Relations and Human Resources, Michelle Hayes, received the complaint. SMF ¶ 51.

Hayes assigned Senior Human Resources Generalist Jennifer Roberts to investigate. SMF ¶ 51. Roberts obtained written statements from Stowe and Napoleone. SMF ¶¶ 51–53. Stowe wrote that he refused service to the customer and that, after the customer left the store, "I was very angry and shouted 'don't fucking come back!' and pulled the door closed loudly." SMF ¶ 52. Hayes and Roberts also asked Lefebvre for help, so she coordinated with Napoleone to corral the facts, review the video recording of the incident, and answer questions about Stowe's familiarity with the masking policy.  Leonard Aff. Ex. 2 ("**Email Chain 1**") 3–5 (ECF No. 48-15); Leonard Aff. Ex. 4 ("**Email Chain 2**") 2 (ECF No. 48-17). Following her investigation, Roberts recommended to Hayes that Stowe receive a final warning. SMF ¶ 54.

Hayes reviewed the information and decided to discharge Stowe. SMF ¶ 55. Hayes concluded, based on Stowe's written statement, that his behavior violated Cumberland Farm's Guest Experience Standards, which require positive guest

---

[4]     A final written warning appears to be a disciplinary action short of termination. *See* Hayes Dep. Ex. 4 ("**Handbook**") 14, 16 (ECF No. 48-10).

5

relations, and General Rules, which prohibit inappropriate or unprofessional conduct and offensive behavior towards customers.[5] SMF ¶ 55. Hayes deemed the swearing unprofessional and arguing with the customer inappropriate. Michelle Hayes Dep. Tr. ("**Hayes Dep.**") 82:10–82:15, 118:1–118:10 (ECF No. 48-9). She also explained that Stowe "didn't de-escalate, and he was part of the confrontation and led to this escalation."[6] SMF ¶ 93. Hayes testified that when she made the determination, she did not know who Stowe was or that he had complained about Cumberland Farms' mask policy. SMF ¶¶ 56–57.

Hayes testified that she was aware that there were prior instances where employees had used foul language on the sales floor and been terminated, but she was not personally involved in those cases, and she could not remember any details at her deposition. Hayes Dep. 176:14–177:22. In his deposition, Stowe identified another employee by name who swore at customers on multiple occasions but was only terminated once she was caught stealing from the store. Stowe Dep. 119:14–120:23.

---

[5]    As part of his employment with Cumberland Farms, Stowe was subject to its policies listed in the Retail Team Member Operating Handbook (the "**Handbook**") and the General Rules for All Team Members (the "**General Rules**"). *See* SMF ¶¶ 3–4, 11–12. Any employee who violates the Handbook, General Rules, "or any applicable laws, regulations, or Company policies and procedures may be subject to appropriate disciplinary action up to and including termination." SMF ¶ 5. The first section of the Handbook, the Guest Experience Standards, includes the expectation that employees carry out the standards of excellent guest service and positive guest relations for every customer. SMF ¶ 3. The General Rules state that "[i]nappropriate or unprofessional conduct (verbal or physical) or the participation in any form of offensive or unlawful discriminating or harassing behavior toward . . . a customer" is grounds for disciplinary action or immediate termination. SMF ¶ 4. Disciplinary action or termination could also result from violating "any state, federal or local laws on the Company's premises" or "[f]ailure to observe all safety rules and practices at all times." Hayes Dep. Ex. 7, at 1–2 (ECF No. 48-11).

[6]    Around the time of the incident, Cumberland Farms faced an uptick in workplace violence cases related to wearing masks, where customers became physical and violent. SMF ¶ 82.

Lefebvre did not agree with Hayes' decision to fire Stowe. SMF ¶ 97. She emailed Roberts that she agreed Stowe should be disciplined for unprofessional conduct but asked that his discharge be reconsidered. SMF ¶ 58; Email Chain 2, at 1. She added that the customer became aggressive "right away" after Stowe asked if he had a mask, that the Pine Street Store served challenging clientele,[7] and that Stowe had not lost "his cool like this in the past." SMF ¶ 98; Email Chain 2, at 1. Napoleone also did not agree with the decision. SMF ¶ 97.

After Hayes made the termination decision, HR sent the termination notice to Napoleone who presented it to Stowe. SMF ¶ 63; Napoleone Dep. 28:19–28:22. The termination notice stated:

> After conducting an investigation, you wrote in your statement that on Friday, May 29, 2020, a customer came in without a mask on. You refused the customer service as he did not have a mask on due to a medical condition. The customer then swore at you, to which you swore back and said, "do not f***ing come back."

SMF ¶ 63; Stowe Dep. Ex. 12 ("**Initial Termination Notice**") (ECF No. 48-6). The notice also had an "Improvement Required" section,[8] that provided:

> You must behave professionally and courteous [sic] with all customers and abide by the Company's General Rules for All Employees. Your manager has spoken with you regarding how to handle customers that come into the store without a mask. Should a guest come in without a mask, in the cities, towns, or states that mandate them, the team members should provide a gentle reminder to our guests that enter our facility. However, at no point will we refuse service or get into a verbal

---

[7]    The record does not address whether a guest service associate is authorized to refuse to serve disruptive customers, although the Handbook suggests the team members can refuse service in some circumstances. Handbook 20–22, 26, 28. Stowe had previously asked disruptive customers to leave the store, but he had never sworn at them. SMF ¶ 61.

[8]    It is unclear why the "improvement required" section was filled in given that the disciplinary decision was to terminate Stowe's employment.

> confrontation with the guest. You chose to refuse the customer service
> and swore at him. Based on your violation of company policy, you are
> being terminated effective immediately.

Initial Termination Notice. Stowe objected to the notice because (1) he refused service

because of the customer's abusive conduct, not because he was maskless; and (2) the

customer did not tell Stowe he had a medical condition. SMF ¶ 64.

The termination notice was revised to state:

> After conducting an investigation, you wrote in your statement that on
> Friday, May 29, 2020, a customer came in without a mask on. You
> refused the customer service after he swore at you, and then you swore
> back and said, "do not f***ing come back."

SMF ¶ 66; Stowe Dep. Ex. 13 ("**Revised Termination Notice**") (ECF No. 48-7). It

contained the same "Improvement Required" section. SMF ¶ 92; Revised Termination

Notice. The termination was effective June 6, 2020. SMF ¶ 68.

Stowe filed a complaint with the Maine Human Rights Commission, which sent

him a Right to Sue letter on August 20, 2021. Compl. ¶¶ 14–15 (ECF No. 11-6);

Answer ¶¶ 14–15 (ECF No. 6). On December 21, 2021, the Plaintiff filed his complaint

in state court, and on January 31, 2022, the case was removed to this Court. Notice

of Removal (ECF No. 1). Stowe is suing the Defendant under Maine's Whistleblowers'

Protection Act (the "**MWPA**"), the Maine Human Rights Act (the "**MHRA**"), and a

Maine law preventing discrimination against employees who report an occupational

safety or health hazard, 26 M.R.S. § 570 ("**section 570**"). Compl. ¶¶ 18, 25. The

Defendant moves for summary judgment on all counts. Def.'s Mot. for Summ. J. 1

(ECF No. 49).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party . . . .' " *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case[.]' " *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). Once the party moving for summary judgment has shown that no such dispute exists, the nonmoving party must respond with sufficient evidence to "establish the presence of a trialworthy issue." *Behlen v. Ascentria Care All.*, No. 2:21-cv-00317-JAW, 2023 WL 3231652, at *19 (D. Me. May 3, 2023) (quoting *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007)).

In reviewing a motion for summary judgment, I must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021). But I am "not obliged either 'to draw unreasonable inferences or credit bald assertions or empty conclusions.' " *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial." *Henry v. United Bank*, 686 F.3d 50, 54 (1st Cir. 2012) (quoting

*Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

## DISCUSSION

The Plaintiff contends, in a two-count complaint, that Cumberland Farms

discharged him in violation of the MWPA, the MHRA, and section 570. Compl. ¶¶ 18,

25. The Defendant believes that it is entitled to summary judgment on each count.

## I.   The Maine Whistleblower Protection Act and Maine Human Rights Act Claims

In Count I, the Plaintiff alleges wrongful discharge and discrimination under

the MHRA, 5 M.R.S.A. § 4572. Compl. ¶¶ 18–23. In Count II, the Plaintiff claims that

his termination violated the MWPA because he was fired for engaging in protected

activity, that is, reporting that Cumberland Farms' "direction to serve maskless

customers was a safety violation and a violation of law that put the health and safety

of Plaintiff and other workers and customers at risk."[9] Compl. ¶ 26.

The MHRA provides, as relevant here, that: "[i]t is unlawful employment

discrimination . . . [f]or any employer . . . to discharge an employee . . . because of

---

[9]      The Complaint also states that the Plaintiff's refusal of service to a maskless person was a protected act under law. Compl. ¶ 26. The Defendant challenged this ground for relief on the basis that Stowe took the position that he did not refuse service because the customer was maskless, but because of the customer's abusive conduct. Def.'s Mem. of Law in Supp. of Mot. for Summ. J. 14–15 (ECF No. 50). The Plaintiff did not respond to this argument. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("**Pl.'s Opp'n**") (ECF No. 52). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Wilson v. Dep't of Veterans Affs.*, No. 2:20-cv-00019-NT, 2021 WL 1840753, at *3 (D. Me. May 7, 2021) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). I thus infer that the Plaintiff is not pursuing a refusal theory of protected conduct under section 833(1)(D) of the MWPA, which provides that an employer may not discharge an employee because that employee has "refused to carry out a directive to engage in activity that would be a violation of a law or rule adopted under the laws of this State." 26 M.R.S.A. § 833(1)(D).

previous actions that are protected under [the Maine Whistleblower Protection Act]." 5 M.R.S.A. 4572 (1)(A).[10] The MWPA prohibits employers from discharging an employee because "[t]he employee, acting in good faith, . . . reports orally or in writing to the employer . . . what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State . . . ." 26 M.R.S.A. § 833(1)(A). The MWPA also offers protection to an "employee, acting in good faith . . . [who] reports to the employer . . . what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual." 26 M.R.S.A. § 833(1)(B). While the MHRA provides the employee a right of action, the requirements for an action to be protected come from the MWPA. *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 46 n.12 (1st Cir. 2016). Because the Plaintiff bases his protected status under the MHRA on his alleged whistleblower status, I consider Counts I and II together.

A whistleblower claim under the MWPA "consists of three elements: (1) that the employee engaged in a protected activity; (2) that the employer took [an] adverse employment action against the employee; and (3) that there was a causal connection between the two." *Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 32, 126 A.3d 1145. Here, there is no dispute that Stowe experienced an adverse employment action. This leaves the question of whether there are triable issues of fact as to whether Stowe

---

[10] The Maine Human Rights Act also contains a retaliation provision that states: "[A] person may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under this Act." 5 M.R.S.A. § 4633. The Plaintiff claims that the Defendant violated section 4633 of the MHRA in a parenthetical within his Complaint. Compl. ¶ 25. The Defendant does not mention section 4633 in his summary judgment filings.

engaged in protected conduct and whether there was a causal connection between that activity and his termination.

## A.     Protected Conduct

The Defendant argues that it is entitled to summary judgment because Stowe never engaged in activity protected by the MWPA. Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("**Def.'s Mem.**") 12 (ECF No. 50).

> [A]ctivities protected under the MWPA include . . . good faith reports, verbally or in writing, to the employer . . . of either (1) "what the employee has reasonable cause to believe is a violation of a law or rule," or (2) "what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual."

*Taghavidinani v. Riverview Psych. Ctr.*, No. 1:16-cv-00208-JDL, 2018 WL 1156287, at *4 (D. Me. Mar. 5, 2018) (quoting 26 M.R.S. § 833(1)(A), (B)). "Although the reported condition does not actually have to be unsafe or illegal, the record must nevertheless support a finding that the plaintiff had reasonable cause to believe a violation occurred." *Kerry v. Sun Life Fin. (US) Servs. Inc.*, 2:17-cv-376-LEW, 2019 WL 206093, at *7 (D. Me. Jan. 15, 2019) (internal citations and quotation marks omitted). "Reasonable cause" exists when the employee has both "a subjective and objectively reasonable belief that a dangerous condition or practice exists." *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 11, 129 A.3d 944.

The Defendant argues that Stowe's complaints about the masking policy did not constitute protected activity because: (1) Stowe complained about the policy because he thought it was unfair, not unsafe or illegal; (2) Stowe was not familiar with the Executive Order; (3) employees other than Stowe complained about the

policy as well; (4) Stowe did not have an objectively reasonable belief that the policy was illegal; and (5) Stowe did not have a subjective belief that the policy was illegal. Def.'s Mem. 14–15. I address each of these arguments below.

The Defendant first argues that Stowe did not complain about the policy because he thought it was unsafe or illegal, but because he felt it was unfair that he had to wear a mask and because he did not want to wear one. Def.'s Mem. 14. The Defendant focuses on the portion of Plaintiff's deposition testimony where he explained that he did not like wearing a mask and probably would not have worn one had it not been required. Def.'s Mem. 14. It is true that at the end of his deposition Stowe made comments to this effect, but considered in context, and with all reasonable inferences in his favor, Stowe's statements are subject to a different interpretation than the one offered by the Defendant. Harkening back to the beginning of the pandemic, when little was known about the transmission of COVID-19, essential workers like convenience store clerks were on the frontlines of a frightening battlefield. Seen from that perspective, Stowe was understandably frustrated that his employer required him to serve customers even if they refused to wear a mask. Stowe also testified that he complained about the masking policy because he thought it violated the Executive Order and put him and his coworkers at risk of contracting the virus. Stowe Dep. 23:16–24:15, 31:13–31:19, 122:13–123:4. On this record, a reasonable juror could conclude that, in context, the Plaintiff's comment that he probably would not have worn a mask was an expression of his frustration and sense of futility with the situation and did not undercut his testimony that

13

reflects he was concerned about his and his coworker's safety. The question of why Stowe complained is best suited for resolution by a jury.

The Defendant's second argument is that Stowe could not have been reporting a legal violation because he had not read or was not "even familiar with" the Executive Order. Def.'s Mem. 14. However, the MWPA does not require that plaintiffs even allege an actual legal violation, *see Kerry*, 2019 WL 206093, at *7, much less that they have read the law. The record shows that Stowe learned about the Executive Order watching the news, reading newspaper headlines, and from Cumberland Farms itself. SMF ¶ 79; Stowe Dep. 26:21–27:4. No more is required.

The Defendant's third argument is that Stowe's complaints were not protected activity because he was complaining about having to wear a mask, not shedding light on a concealed or unknown safety issue or legal violation. Def.'s Mem. 12–14 (citing *Pushard v. Riverview Psychiatric Ctr.*, 2020 ME 23, ¶ 19, 224 A.3d 1239). As part of this argument, the Defendant contends that Stowe cannot be described as "blowing the whistle" on unsafe or illegal activity by Cumberland Farms because "all of the employees working at the Pine Street Store raised the same complaint." Def.'s Mem. 14.

"The MWPA covers two related, but distinct, categories of claims." *Lexus v. Mentor Abi, LLC*, No. 2:20-cv-00004-LEW, 2021 U.S. Dist. LEXIS 160799, at *2 (D. Me. Aug. 25, 2021). Category one "involves employee revelations concerning 'concealed or unknown safety issues.' " *Id.* (quoting *Pushard*, 2020 ME 23, ¶ 19, 224 A.3d 1239). Category two "involves an employee report 'made to *shed light on and in*

*opposition to* an illegal act or unsafe condition.' " *Id.* (quoting *Pushard*, 2020 ME 23, ¶ 19, 224 A.3d 1239). If the employee meets either of these categories, then it is a protected MWPA report, not simply a disagreement "about whether the employer's policy decisions cause safety concerns." *Pushard*, 2020 ME 23, ¶ 20, 224 A.3d 1239.

The Defendant relies heavily on *Pushard*, wherein the plaintiff, a director of nursing at a psychiatric center, was fired soon after making complaints about the center's staffing policies. *Id.* ¶¶ 3–5, 12. The plaintiff alleged that his termination violated the MWPA because he complained about a condition or practice that created a health or safety risk. *Id.* ¶ 18. However, the Law Court found that Pushard was complaining about his employer's approach to staffing shortages, not making a protected report about staffing conditions "to shed light on and in opposition to" a safety concern. *Id.* ¶¶ 19–21.

*Pushard* is distinguishable from this case. In *Pushard*, the parties agreed that the understaffing problem at the psychiatric center had been a persistent, ongoing problem for years. *Id.* ¶ 3. The staffing shortages had received attention from the media, the public, and the Maine Legislature. *Id.* ¶ 21. By contrast, the Governor's April 2020 Executive Order, which prompted Stowe's complaints, was entered only a month before the incident. While COVID-19 precautions in stores may have been in the news generally, Cumberland Farms' masking policy is not alleged to have received any scrutiny. Additionally, Stowe complained because he found a disparity between the company's public-facing message requiring masks and its actual policy, which required employees to serve maskless customers. Viewing the evidence in the

15

light most favorable to the non-moving party, an inference can be drawn that Cumberland Farms' internal policy was not for public consumption, and further, that Stowe's complaint shed light on and opposed the contradiction in Cumberland Farm's internal and external policies. On these facts, *Pushard* does not control.

The Defendant also contends that because the other employees in the Pine Street Store raised the same complaint, Stowe's complaint could not have been about a "concealed or unknown" condition or "shed light" on the issue. The Defendant offers no direct support for this contention, and other cases with multiple whistleblowers have survived summary judgment. *See Taghavidinani*, 2018 WL 1156287, at *1, 4; *Cole v. Me. Off. of Info. Tech.*, No. 1:17-cv-00071-JAW, 2018 WL 4608478, at *25 (D. Me. Sept. 25, 2018); *Ako-Annan v. E. Me. Med. Ctr.*, No. 1:19-cv-00544-JAW, 2021 WL 3719240, at *11, 41–43 (D. Me. Aug. 20, 2021). In *Pushard*, the Law Court expressly "decline[d] to adopt an 'initial reporter' rule for WPA cases." *Pushard,* 2020 ME 23, ¶ 22, 224 A.3d at 1245.  Although the record here suggests that all of the employees in the Pine Street Store complained about the mask policy, the record is undeveloped about the number of employees, the extent to which they complained, or the order in which complaints were made. On this record, a jury could reasonably conclude that the Plaintiff was shedding light on a concealed or unknown safety issue or legal violation.

The Defendant's fourth argument is that Stowe did not have an objectively reasonable belief that the masking policy was illegal. Def.'s Mem. 15. It points out that the Executive Order did not require private businesses to enforce it. But "the

reported condition does not actually have to be . . . illegal" for an employee to reasonably believe it was. *Kerry*, 2019 WL 206093, at *7. The Plaintiff testified that his belief was based on watching the news and reading headlines, as well as communications from management and the signs that Cumberland Farms posted at the entrance. SMF ¶¶ 16, 79. The posted signs stated that all customers "must" wear masks. Leonard Aff. Ex. 1, at 3. Yet the internal policy forbid employees from refusing to serve maskless customers. SMF ¶ 18. Especially considering that the incident occurred during the early stages of the pandemic when there was evolving public health guidance, the Plaintiff has created a triable issue as to whether he held an objectively reasonable belief that Cumberland Farms' policies were illegal.

The Defendant's fifth and final argument is that the Plaintiff did not subjectively believe the policy was illegal. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("**Def.'s Reply**") 4 (ECF No. 56). This argument also fails. Stowe testified that he believed the Executive Order required people to wear masks indoors and that Cumberland Farms' policy of serving unmasked customers was illegal. SMF ¶ 77. The Defendant argues that Stowe could not have believed that the policy was illegal because he served maskless customers and did not personally like having to wear a mask. *See* Def.'s Reply 4. Those facts, while perhaps relevant to Stowe's subjective beliefs, are not dispositive. As discussed above, Stowe's testimony regarding his personal preferences for masking, when viewed in context, is subject to multiple interpretations. A jury could reasonably conclude that Stowe served maskless customers because he knew that his job depended on it, not because he actually

thought the policy was legal. The issue of Stowe's subjective belief is for the jury to decide.

### B.   Causal Connection

The Defendant next argues that, even if Stowe's actions were protected, he did not offer evidence of a causal connection between his complaints and the decision to fire him. Def.'s Mem. 16. To establish causation, the employee must show that the whistleblowing "was a substantial, even though perhaps not the only, factor motivating" the adverse action. *E.g.*, *Theriault*, 890 F.3d at 349 (quoting *Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 13, 98 A.3d 221, 226).

The Defendant correctly points out that the Law Court "shelved the *McDonnell Douglas* framework" and developed a "Maine-specific retaliation paradigm" for MWPA claims at summary judgment.[11] *Theriault*, 890 F.3d at 350. Under Maine's framework, "the Court asks 'whether the record as a whole would allow a jury to reasonably conclude that the adverse employment action was motivated at least in part by retaliatory intent.'" *Lennan v. Healthcare Servs. Grp., Inc.*, No. 2:20-cv-00057-GZS, 2022 WL 504113, at *8 (D. Me. Feb. 17, 2022) (quoting *Brady*, 2015 ME 143, ¶ 37, 126 A.3d 1145). In this inquiry, Maine courts "recognize any evidence that the employer had a lawful reason for the adverse action . . . and any evidence that the proffered reason is merely a pretext." *Theriault*, 890 F.3d at 350 (quoting *Brady*,

---

[11]      Under the *McDonnell Douglas* paradigm, the plaintiff must make out a "prima facie case" of retaliation that would justify a conclusion of retaliation. *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 350 (1st Cir. 2018). The burden of production then shifts to the defendant to identify a legitimate reason for the adverse employment action. *Id.* Then, the burden shifts back "to the plaintiff to show that the proffered reason was not the real reason for the adverse employment action but, rather, was a pretext for retaliation." *Id.*

2015 ME 143, ¶ 37, 126 A.3d 1145). The plaintiff must "adduce precisely the same quantum of proof that []he would have had to adduce to defeat summary judgment under the *McDonnell Douglas* framework." *Id.* at 350–51. "If the evidence in the summary judgment record would allow a jury to find for the employee on each element of the employee's case, then the employer is not entitled to summary judgment." *Brady*, 2015 ME 143, ¶ 39, 126 A.3d 1145.

The Defendant makes three arguments as to why the Plaintiff has not met his burden. First, it observes that the Plaintiff admitted to swearing at the customer and points out that the Plaintiff has shown no evidence of any similarly situated employee who engaged in similar conduct who was not discharged. Def.'s Mem. 17. Second, the Defendant cites evidence that Hayes was not aware of any complaints made by Stowe and thus could not have been motivated to terminate him because of Stowe's protected activity. Def.'s Mem. 18. Third, it points out that other employees who raised the same concerns about Cumberland Farms were not terminated. Def.'s Mem. 19. I address each of the Defendant's arguments in turn.

First, the Defendant is correct that the Plaintiff has admitted that he swore at a customer. I agree with the Defendant that such conduct could be a legitimate basis for termination. The question becomes, then, whether there is evidence from which a jury could reasonably conclude that the Plaintiff's complaints about the policy might have been an additional basis for his termination, or, in other words, whether but for Stowe's complaints he would not have been terminated. *See Charette v. St. John Valley Soil & Water Conserv. Dist.*, 332 F. Supp. 3d 316, 356 (D. Me. 2018).

Contrary to the Defendant's contention, the Plaintiff has marshalled some evidence to suggest that Hayes' decision to terminate was motivated by more than just Stowe's profane comment to a customer. To begin, Stowe's termination was close in time to his last complaint. Governor Mills issued the Executive Order on April 29, 2020, SMF ¶ 13, and Stowe "continuously hammered" Napoleone about the masking policy from the date of the mandate to when he was let go on June 6, 2020. Stowe Dep. 122:21–123:4. Close temporal proximity can be evidence of a causal link between protected conduct and adverse action. *See Theriault*, 890 F.3d at 352.

In addition, as to whether others who had behaved similarly to Stowe were punished less harshly, Stowe testified that he knew of another employee (who he named) who had sworn at customers but who was not terminated until she was caught stealing from Cumberland Farms. Although Hayes' testified that there were other instances where employees were terminated for swearing at customers, she was unable to give any specifics about those instances in her Rule 30(b)(6) deposition. Hayes Dep. 176:14–177:22.

Further, prior to the incident, Stowe had an unblemished record with Cumberland Farms at a store known to have difficult clientele. Stowe also has established that the Senior Human Resources Generalist Roberts recommended that Cumberland Farms take disciplinary action short of termination and that both Napoleone and Lefebvre disagreed with the decision to terminate Stowe, suggesting that Hayes' decision was disproportional to the offending conduct and potentially motivated by something more than his behavior with a single customer.

20

The second argument advanced by the Defendant is that there is no evidence that Hayes knew of Stowe's complaints before she decided to terminate him. *See* Def.'s Mem. 18. Generally, the plaintiff must show that the decision-maker had knowledge of the protected activity "because 'one cannot have been motivated to retaliate by something []he was unaware of.'" *Cormier*, 2015 ME 161, ¶ 18, 129 A.3d 944 (quoting *Medina–Rivera v. MVM, Inc.,* 713 F.3d 132, 139 (1st Cir. 2013)). But the plaintiff need not always provide direct evidence that the decision-maker knew of his complaints. "[A] reasonable jury can infer that decision-makers were aware of an employee's complaints if the complaints 'could or should have been reported to' them." *Young v. Shaw's Supermarkets, Inc.*, No. 2:18-cv-00320-JDL, 2020 WL 2475875, at *5 (D. Me. May 13, 2020) (quoting *Cormier*, 2015 ME 161, ¶ 20, 129 A.3d 944).

Here, the Plaintiff contends that the factfinder can draw an inference that Hayes actually did know about his complaints. In *Cormier*, the Law Court permitted the inference that the decision-maker knew of a complaint when it was close in time to the termination and there was a "communication pathway"[12] regarding such complaints. 2015 ME 161, ¶¶ 20–21, 129 A.3d 944. Likewise, in *Brady*, the Law Court allowed the inference because there was a reporting relationship between the decision-maker and those who received the complaints. 2015 ME 143, ¶ 21, 126 A.3d 1145.

---

[12]   Specifically, the decision-maker was "particularly attentive" to staffing, there was a policy requiring staffing complaints be reported to supervisors, and there was a directive to notify her of potential regulatory violations regarding staffing. *Cormier v. Genesis Healthcare, LLC*, 2015 ME 161, ¶ 21, 129 A.3d 944.

The Plaintiff has put forth some evidence that would permit an inference that Stowe's complaints were relayed to Hayes. For one, a jury could reasonably infer that an employee's continuous complaints about a controversial company policy would have reached Hayes given that she was the manager of employee relations responsible for HR Policy. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("**Pl.'s Opp'n**") 13 (ECF No. 52); SMF ¶ 86. Additionally, Napoleone testified that she communicated Stowe's complaints to Lefebvre, who she believed "went to HR with it" because emails came back about how to approach the masking policy situation.[13] Napoleone Dep. 17:24–18:21. There is evidence that Hayes assigned Roberts to investigate Stowe and that Napoleone and Lefebvre, who both knew about Stowe's complaints, helped in the investigation. A jury could infer that Napoleone and Lefebvre reported Stowe's concerns about the masking policy to Roberts and/or Hayes, especially since the policy was related to the incident and both termination notices mentioned that Stowe had refused to serve a maskless customer.[14] *See Young*, 2020 WL 2475875, at *2–3, 5 (finding that an inference of the decision-makers' knowledge arose because the person the plaintiff complained to worked with and reported to the decision-makers on the investigation into the plaintiff's conduct).

---

[13]    There is nothing in the Statement of Material Facts that establishes how big the Defendant's HR department is or how a report would work its way through HR.

[14]    The Plaintiff asserts that it was Hayes who was responsible for disseminating the policy of serving maskless customers in an effort to show "a direct motive and connection between Mr. Stowe's termination and his continuous complaints . . . ." Pl.'s Opp'n 13. The Defendant faults the Plaintiff for making the unsupported claim that it was Hayes who disseminated the policy, SMF ¶ 87, however, the Plaintiff's claim finds ample support in the record. *E.g.,* Hayes Dep. 108:9–108:12 ("[W]e had sent out communications to the store telling our team members to offer gentle reminders and not to get into confrontations. . . ."); 108:20–109:2 (explaining the "let [the customer] get what he needs and move on" guidance they provided to stores).

While Hayes testified that she was unaware of Stowe's complaints, a jury could question her credibility. Hayes testified that not only did she not know of Stowe's complaints, but that the company did not know of his complaints either. Hayes Dep. 192:2–193:17.[15] It is undisputed, however, that Napoleone and Lefebvre—part of the management team at Cumberland Farms and thus agents of the company—were aware of the Plaintiff's concerns. SMF ¶ 27. That Hayes denied that Cumberland Farms had any knowledge of the complaints could lead a jury to question her testimony regarding her own knowledge.

Defendant's third argument is that other employees from the Pine Street Store who complained about the mask policy were not fired. While this is an undisputed fact, it is not dispositive. As discussed above, the record is silent about the number of employees, the extent to which they complained, or the order in which complaints were made. On this record, a reasonable juror could conclude that Stowe's "hammering" about the policy was getting under management's skin. The issue comes back to whether the Plaintiff has marshalled evidence sufficient to allow a reasonable jury to conclude that the termination was motivated in substantial part by the Plaintiff's protected conduct.

Drawing all reasonable inferences in Stowe's favor, the Plaintiff has produced evidence sufficient to generate an issue of material fact on the causation issue. While the Defendant reminds me that it is not the Court's role to sit as a super personnel

---

[15]     Although the Defendant's counsel objected during this portion of the deposition, the Defendant cites to this portion in its Statement of Material Facts. *See* SMF ¶ 57.

department and second-guess an employer's non-discriminatory business decisions, Def.'s Mem. 16–17, it is also not my role to take disputed facts from a jury. The motion for summary judgment on Counts I and II is therefore denied.

## II.    Section 570

In Count II, the Plaintiff argues that his discharge violated section 570. Compl. ¶ 25. The Defendant points out that the law only applies to public sector employment. Def.'s Mem. 19–20. The Plaintiff does not dispute that section 570 does not apply to him because Cumberland Farms is not a public sector employer. Pl.'s Opp'n 1. Accordingly, the Defendant's motion for summary judgment is granted regarding the section 570 claim.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's motion for summary judgment (ECF No. 49). The motion is **GRANTED** with respect to the claims under 26 M.R.S. § 570 and **DENIED** with respect to the remaining claims.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 19th day of September, 2023.

24